UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENISE KAYIRA, f/k/a DENISE CAMPBELL, ) ) ) Plaintiff, ) ) vs. ) ) HILCO RECEIVABLES, LLC, et al., ) ) Defendants. ) | No. 4:08-CV-1184 (CEJ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Hilco Receivables to enforce a settlement agreement allegedly entered into by the parties. Plaintiff opposes the motion and the issues have been fully briefed.

Plaintiff brings suit against defendants for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e). Defendant Hilco Receivables claims that the parties reached an agreement to settle all of plaintiff's claims on December 23, 2008. The parties submit numerous letters and e-mail correspondence detailing their settlement negotiations. The facts surrounding these negotiations are not in dispute. Instead, the sole issue is whether what was said by the parties legally constitutes a binding agreement. If so, the Court has authority to enforce the agreement. See BP Products North America, Inc. v. Wallis Petroleum, L.C., 2007 WL 1240261 at *2 (E.D. Mo. 2007).

"An enforceable settlement requires the parties to reach agreement on the essential terms of the deal." Sheng v. Starkey Laboratories, Inc., 117 F.3d 1081, 1083 (8th Cir. 1997).

"Settlement agreements that do not expressly resolve ancillary issues can, nevertheless, be enforceable." Id. In determining whether an unresolved issue is "material" or "ancillary", the Court looks to the intent of the parties. See Worthy v. McKesson Corp., 756 F.2d 1370, 1372 (8th Cir. 1985)("Crucial to the construction of the settlement agreement is the intent of the parties."). "Material terms are those terms that the settlement hinges upon." Transclean Corp. v. Motorvac Technologies, Inc., 2002 WL 31185886 at *8 (D. Minn. 2002). However, if the parties intended to leave an issue to be worked out during later negotiations, the fact that the issue is still unresolved "cannot be used to abrogate an otherwise valid agreement." Sheng, 117 F.3d at 1083.

The first offer for settlement was tendered by plaintiff to defendants on December 1, 2008, offering to settle all claims for $8,000.00 and acceptance of all terms in the proposed settlement agreement. One of the terms in plaintiff's proposed agreement required defendant to issue a 1099-MISC form to plaintiff's counsel instead of directly to plaintiff herself. On December 3, 2008, defendant submitted a counteroffer to settle the case for $4,000.00, and insisted that the Form 1099 be issued directly to plaintiff.

On December 5, 2008, plaintiff rejected defendant's counteroffer and proposed to settle the matter for $6,000.00. Additionally, plaintiff stated that she did "not consent to receipt of a 1099." Defendant rejected plaintiff's counteroffer and, in a letter dated December 9, 2008, offered to pay plaintiff $5,000.00

to settle her claims.  Defendant again insisted that the settlement agreement allow for a Form 1099 to be issued to plaintiff.

On December 23, 2008, plaintiff's counsel responded that "[o]ur client can agree to the monetary offer...but she's not happy if she has to pay taxes on the whole amount.  Can we work out that clause?  If so, we have a deal."[1]  Plaintiff's co-counsel sent a letter to opposing counsel the same day, stating that "[o]ur client will not agree to the issuance of a 1099 to her. [We have] made this point very clear."  The letter stated that, if the Form 1099 issue was not resolved, "then we must proceed with litigation."

Counsel for defendant Hilco replied, stating that they believed they were required by law to issue the Form 1099 directly to plaintiff, since the amount of the settlement exceeded $600.00.  Plaintiff's counsel disagreed with defense counsel's interpretation of the Internal Revenue Service requirements, and subsequently informed defendant that its "position [on the IRS issue] may indeed be a deal killer."

Upon reviewing the various correspondence between the parties, the Court concludes that the parties failed to reach an agreement on all material terms and therefore no settlement agreement exists. The Court is guided by the Eighth Circuit's decision in Sheng, which, in finding that a settlement agreement did exist, noted that "the deal hinged neither on the tax treatment of the payment, nor on other particulars."  Sheng, 117 F.3d at 1083.  Here, unlike in

---

[1] Defendant Hilco contends that this e-mail constitutes plaintiff's acceptance of defendant's counteroffer.

Sheng, the deal clearly "hinged" on the tax treatment of the payment. Throughout the negotiations, plaintiff insisted that a Form 1099 be issued to her counsel, and not directly to her, for tax purposes. This was not an "ancillary" issue that the parties intended to be worked out at a later time. Nor was this a situation where plaintiff accepted an offer of settlement only to later realize that the tax consequences were financially disadvantageous. See Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir. 1985)(noting that a party cannot attempt to rescind a binding settlement agreement simply because the agreement ultimately proves to be disadvantageous). Instead, plaintiff made it explicitly clear that any acceptance of an offer for settlement was conditioned upon resolution of the tax issue.[2]

Defendant insists that the IRS issue is immaterial and therefore, it does not matter whether it has been resolved. However, "[m]aterial terms are those terms that the settlement hinges upon." Transclean Corp. v. Motorvac Technologies, Inc., 2002 WL 31185886 at *8 (citing Sheng). The intent of the parties is key to this determination, and the Court has no doubt that, in plaintiff's mind, the settlement certainly hinged upon resolution

---

[2]Defendant Hilco goes to great lengths, devoting its entire reply memorandum, at convincing the Court that tax law requires the issuance of a Form 1099 to plaintiff. This is not the issue before the Court, and the Court need not decide it. Defendant claims that "plaintiff cannot require Hilco to agree to perform an illegal act as a precondition to an enforceable Settlement Agreement." While this statement may be true, it presupposes the existence of an enforceable agreement to begin with. Here, as explained above, no such agreement was ever formed because plaintiff rejected defendant's December 23, 2008 counteroffer.

of the IRS issue.  Plaintiff's Form 1099 demand was present in her initial offer for settlement, and remained important to plaintiff throughout the negotiations.  Indeed, in the very e-mail where plaintiff allegedly accepted defendant's counteroffer, plaintiff's counsel stated that defendant's proposed IRS clause was unacceptable.  Counsel stated that, *if* the IRS issue could be worked out, they would have a deal.  Thus, any acceptance of defendant's counteroffer in the December 23, 2008 e-mail was clearly conditional upon changes being made to the portion of the agreement dealing with the Form 1099 issue.  Under basic contract principles, this e-mail effectively rejects defendant's counteroffer by adding such a condition, and becomes an additional counteroffer that defendant later rejected.  Therefore, no binding settlement agreement was reached between the parties.

Accordingly,

**IT IS HEREBY ORDERED** that the motion [#25] of defendant Hilco Receivables to enforce the settlement is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 26th day of January, 2009.